**AFFILIATED FM INSURANCE COMPANY, as Subrogee of Fiat Motors of North America, Inc. and Fiat Motors of North America, Inc., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

No. 83–7–01039.

United States Court of
International Trade.

April 19, 1985.

Podvey, Sachs & Catenacci, Henry J. Catenacci, Newark, N.J., for plaintiffs.

Richard K. Willard, Acting Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, New York City, Michael P. Maxwell, Washington, D.C., for defendant.

DiCARLO, Judge:

Between December, 1979 and September 1980, Fiat Motors of North America, Inc. (Fiat) made seventeen entries covering 1,578 automobiles at Wilmington, Delaware. Fiat paid all duties and the vehicles were released to Fiat from the custody of the United States Customs Service (Customs).

In October, 1980, a tidal flood struck the Wilmington port. The vehicles were declared constructive total losses. Affiliated FM Insurance Company (Affiliated) became the owner of the automobiles when it paid Fiat the landed cost of the vehicles, including the duties, under an insurance contract.

Affiliated attempted to mitigate its losses by selling the vehicles for salvage. Affiliated was thwarted from selling the vehicles in the United States when Fiat removed the Environmental Protection Agency (EPA) and National Highway Traffic Safety Administration (NHTSA) certificates from the vehicles[1] and obtained a preliminary injunction against Affiliated in the United States District Court for the District of New Jersey, enjoining the sale of the vehicles in the United States and Canada. *Fiat Motors of North America, Inc. v. Affiliated FM Insurance Co.*, Civil Action No. 81–25 (D.N.J. March 12, 1982), *aff'd*, 691 F.2d 490 (3rd. Cir.1982). The United States was not a party to that proceeding. The damaged vehicles were then exported.

The seventeen entries were liquidated between July 24, 1981 and November 5, 1982. On January 6, 1983, Affiliated requested reliquidation of the entries pursuant to section 520(c)(1) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1520(c)(1) (1982). The next day, Affiliated, as subrogee of Fiat, filed protests against the seventeen entries seeking a refund of duties under section 558(a)(2) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1558(a)(2) (1982). The protests were denied on January 28, 1983.[2]

Affiliated, joined by Fiat, filed the summons and complaint contesting the denial of the protests[3] under 28 U.S.C. § 1581(a) and Customs denial of or failure to act on their section 520(c)(1) claim.[4]

The defendant moves to dismiss the action claiming that the plaintiffs have failed to state a claim upon which relief can be granted. The motion is granted.

The question to be decided is whether plaintiffs are entitled to a refund of duties.

---

1. Sale of automobiles in the United States is prohibited without these certificates. *See* 15 U.S.C. § 1397(a)(1) (1982); 42 U.S.C. § 7522(a)(1) (1982).

2. Customs denied each protest, stating "Protester is not a party within the purview of 19 C.F.R. 174.12". Defendant conceded at oral argument that if Affiliated demonstrated that it was the subrogee of Fiat under the insurance contract, it could file the protests as the "importer" within 19 C.F.R. § 174.12(a)(1). The Court finds that Affiliated is the subrogee of Fiat.

3. Since protests of eight of the seventeen entries were not timely within section 514(c)(2) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1514(c)(2) (1982), the Court does not have jurisdiction to consider their denial by Customs. *Lowa, Ltd. v. United States*, 5 CIT 81, 561 F.Supp. 441 (1983), *aff'd*, 724 F.2d 121 (Fed.Cir. 1984).

4. Plaintiffs fail to state a claim under section 520(c)(1), which is available only to challenge "clerical error, mistake of fact or other inadvertance not amounting to an error in the construction of a law". *See C.J. Tower & Sons of Buffalo, Inc. v. United States*, 68 Cust.Ct. 17, 336 F.Supp. 1395 (1972), *aff'd*, 61 CCPA 90, C.A.D. 1129, 499 F.2d 1277 (1974) (discussing legislative history of section 520(c)(1)). There is no allegation that Customs has made any mistake of fact or clerical error in this case.

Refund of duties after the release of merchandise is governed by section 558(a), which provides:

(a) No remission, abatement, refund, or drawback of estimated or liquidated duty shall be allowed because of the exportation or destruction of any merchandise after its release from the custody of the Government, except in the following cases:

(1) When articles are exported with respect to which a drawback of duties is expressly provided for by law;

(2) When prohibited articles have been regularly entered in good faith and are subsequently exported or destroyed pursuant to a law of the United States and under such regulations as the Secretary of the Treasury may prescribe; and

(3) When articles entered under bond, under any provision of law, are destroyed within the bonded period as provided for in section 1557 of this title, or are destroyed within the bonded period by death, accidental fire, or other casualty, and proof of such destruction is furnished which shall be satisfactory to the Secretary of the Treasury, in which case any accrued duties shall be remitted or refunded and any condition in the bond that the articles shall be exported shall be deemed to have been satisfied.

Plaintiffs rely on the exception provided by section 558(a)(2), arguing that the cars were "prohibited articles" because they could not be sold in the United States after the EPA and NHTSA certificates were removed and the preliminary injunction issued.

■ The Court disagrees. In order to be "prohibited articles" under section 558(a)(2) the vehicles must have been "prohibited articles" at the time of entry into the United States. *See Wm. J. Jones and Co. v. United States*, 38 CCPA 158, 161–62, C.A.D. 453 (1951) (plaintiffs must demonstrate "that the involved merchandise arrived in such ... condition as to constitute a prohibited article within the meaning of section 558 ..."); *Glazer's Wholesale*

*Drug Co. v. United States*, 51 Cust.Ct. 39, C.D. 2411 (1963). The vehicles were not "prohibited articles" when they entered the United States.

Plaintiffs present no case, and the Court finds none, where duties were refunded under section 558 because the merchandise became "prohibited articles" after entry into the United States. Plaintiffs cite *Kreutz & Co. v. United States*, 20 CCPA 109, T.D. 45752, (1932) and *Kroger Grocery & Baking Co. v. United States*, 14 Cust.Ct. 59, C.D. 911 (1945), but in both cases the merchandise was "prohibited articles" when imported.

■ Simply stated, section 558(a)(2) does not insure importers against loss by refunding duties if merchandise becomes unmarketable after entry. *See Camilo E. Rosello, Inc. v. United States*, 63 Cust.Ct. 454, C.D. 3935 (1969) (no provision permits refund of duties where merchandise is destroyed after release from custody of Customs).

Since the cars were not "prohibited articles" when entered, plaintiffs fail to state a claim upon which relief can be granted.

The motion to dismiss is granted. Judgment will be entered accordingly.